UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

LUCRE, INC., a Michigan corporation

       Plaintiff,

   v.

MICHIGAN BELL TELEPHONE COMPANY, d/b/a SBC MICHIGAN, J. PETER LARK, ROBERT B. NELSON, and LAURA CHAPPELLE, Commissioners of the Michigan Public Service Commission (in their official capacities as Commissioners and not as individuals),

       Defendants.
_____/

Case No. 1:04-CV-497

Hon. Richard Alan Enslen

**OPINION**

     This matter is before the Court on Plaintiff Lucre, Inc.'s requested review, pursuant to 47 U.S.C. § 252(e)(6), of the Michigan Public Service Commission's ("Commission") order dismissing Plaintiff's administrative complaint.

**I.    BACKGROUND**

     Pursuant to the Telecommunications Act of 1996, specifically 47 U.S.C. § 252(a), Plaintiff and Defendant Michigan Bell Telephone Company ("Michigan Bell") executed an interconnection agreement, wherein Plaintiff contracted to connect its telecommunications network to Defendant Michigan Bell's local exchange network. The interconnection agreement was approved in May 1999, and actual network linkage began in June 1999. Plaintiff and Defendant Michigan Bell

interconnected their networks through a joint Synchronous Optical Network ("SONET") ring.[1] The parties' dispute began over multiplexing fees.[2]

Section 3.2.4 of the interconnection agreement provides:

Based on the physical architecture and Reciprocal Compensation arrangements that the Parties agree to in this Agreement, each Party shall be responsible for establishing and maintaining certain physical facilities and logical trunking necessary for Interconnection.  Each Party shall provide, at is own expense, the physical facilities and logical trunking on its side of the common physical meet point with respect to each Interconnection which provides for the transmission, routing and termination of Telephone Exchange Service traffic and Exchange Access traffic to their respective Customers.  Such facilities and logical trunking shall be provided on a basis consistent with the standards set forth in this Agreement.  Lucre may purchase such facilities from Ameritech at the rates set forth at Item V of the Pricing Schedule.  Any Interoffice Transmission Facilities purchased by Lucre from Ameritech for such transmission shall be at the rates for Dedicated Interoffice Transmission Facilities.

According to Plaintiff, it discovered that it had inadvertently failed to bill Defendant Michigan Bell for multiplexing services.  Predictably, Defendant Michigan Bell denied owing Plaintiff for multiplexing.  Plaintiff's administrative complaint sought recovery of these fees.

Although Plaintiff's administrative complaint contained several counts, the parties mediated the dispute and the Commission perceived only one issue before it: whether Plaintiff could charge Defendant Michigan Bell for multiplexing telephone calls during the course of Plaintiff and Michigan Bell's interconnection agreement.  The Commission ordered that Plaintiff could not charge

---

[1] A SONET is a standard protocol for transmitting calls over fiber optic cable on one network or transmitting calls over fiber optic cable between two different networks.  A SONET passes light back and forth over fiber cable in lockstep with a master clock so transmissions will arrive and depart neither lost nor jumbled.  Harry Newton, NEWTON'S TELECOM DICTIONARY 736 (2003).

[2] Multiplexing describes the process whereby multiple signals are transmitted over a single line or separating multiple signals from a single line to multiple lines.  Newton, *supra* note 1 at 527. In the context of this case, Plaintiff seeks to charge Defendant Michigan Bell for calls that originate on Defendant Michigan Bell's network and terminate on Plaintiff's network.

for multiplexing.  The Commission also subsequently denied Plaintiff's petition for rehearing and reopening.

In its requested review, Plaintiff articulates three points of error:[3] (1) that the Commission incorrectly interpreted the interconnection agreement; (2) that the Commission's refusal to reopen and enlarge the record denied Plaintiff due process of law; and (3) that this Court may set aside the Commission's order under Michigan Compiled Laws §§ 484.2203(7) and 462.26.[4]

## II.  STANDARD OF REVIEW

Generally, a federal court reviewing the Commission's decision will review *de novo* questions of law under the Act, while subjecting questions of fact to arbitrary and capricious review. *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 586 (6th Cir. 2002).  However, because the appropriate standard of review is in dispute, the Court finds it necessary to develop these principles in further detail for each Count remaining in Plaintiff's Complaint.

### A.  The Commission's Interpretation of the Interconnection Agreement

Count one of Plaintiff's Complaint charges the Commission with an erroneous interpretation of the interconnection agreement.  Although Count One alleges general violations of the Act, those claims are premised upon the Commission's reading of the interconnection agreement, employing principles of Michigan contract law.  Plaintiff's remedy, payment of an allegedly bargained for

---

[3] Because review before this Court come by way of Plaintiff's Complaint, its points of error are styled as counts and will be referred to as such.

[4] Beyond an exceedingly cursory sketch in its Complaint, Plaintiff has not provided any evidence on this point, and therefore, the Court will dismiss Count Three without inquiry.  It is simply not sufficient for a party to mention a possible argument in the most skeletal way and leave for the court the task of putting flesh on its bones.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

multiplexing fee, resides within the interconnection agreement and not the Act. Therefore, because the Commission's decision is derived from an understanding of Michigan law, it will be reviewed under an arbitrary and capricious standard. *Mich. Bell Tel. Co. v. MCI Metro Access Transmission Servs. Inc.*, 323 F.3d 348, 357 (6th Cir. 2003); *see also BellSouth Telecomm., Inc. v. Goss*, No. 04-5605, 2005 WL 1799390, *2 (6th Cir. July 29, 2005).

Arbitrary and capricious review "is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (citations omitted). Thus, this Court will uphold the Commission's decision if it is the product of a deliberate and principled reasoning process, based upon the evidence in the record as a whole. *MCI Metro*, 323 F.3d at 354 (citing *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)).

**B.    Due Process Deprivation**

Count Two of Plaintiff's Complaint avers that the Commission denied Plaintiff due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, when it refused to reopen the record and receive further evidence. Constitutional challenges to agency orders are reviewed *de novo*. *See Stupak-Thrall v. U.S.*, 70 F.3d 881, 884 (6th Cir. 1995); *accord Mekhoukh v. Ashcroft*, 358 F.3d 118, 129 (1st Cir. 2004); *C.F.F.E.R.D.L.O. v. F.E.R.C.*, 297 F.3d 771, 778 (8th Cir. 2002); *Alabama Power Co. v. F.C.C.*, 311 F.3d 1357, 1367 (11th Cir. 2002).

Thus, in reviewing Plaintiff's claimed due process deprivation, the Court will review the administrative record, evidence, and the Commission's decision *de novo*. In so finding, the Court

acknowledges its constitutional mandate as the primary guardian of federal rights. *Cf. Steffel v. Thompson*, 415 U.S. 452, 463 (1974).

### III.  ANALYSIS

#### A.  The Commission's Interpretation of the Interconnection Agreement

"Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496 (2001) (citing *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999)). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Universal*, 464 Mich. at 496 (citing *Farm Bureau Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999)). The Commission found that neither party offered an unambiguous interpretation of the interconnection agreement—it was susceptible to either parties' interpretation—and because Plaintiff was the complainant, the Commission required it bear the burden of persuasion.

The Commission's decision interpreted section 3.2.4 of the interconnection agreement to mean that each party covers the cost of multiplexing on its side of the joint SONET. The Commission found that the parties ascribed special meaning to the term physical facilities, equating physical facilities to multiplexing services. The Commission supported this reading by looking at the agreement as a whole, where it noted that the parties had agreed to exchange telecommunication traffic at the DS-3 level, necessitating multiplexing on both sides of the joint SONET ring.[5] Next, the Commission found Plaintiff's past practice supported its finding because Plaintiff had not billed Defendant Michigan Bell for multiplexing in nearly four years. The Commission also found that its

---

[5] DS-3 refers to digital signal level three. The increasing levels are used to denote signal speeds and classify capacities of digital lines and trunks. Newton, *supra* note 1 at 265.

reasoning was consistent with Item V of the interconnection agreement's Pricing Schedule, where the terms facility and services were used in a manner that suggested services was a subset of physical facilities. Lastly, the Commission concluded that Plaintiff's interpretation would render a subsequent section of the interconnection agreement nugatory.

Plaintiff contends that the Commission's reading of the interconnection agreement was arbitrary and capricious because it looked beyond the plain meaning of the agreement. However, as perceived by the Commission, the disputed sections of the interconnection agreement were ambiguous and it was permissible to look beyond the agreement.[6] *Nikkel*, 460 Mich. at 566. "[W]here the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct . . . and past practice to aid in interpretation." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 470 (2003). The Commission looked to parties' past practice under the interconnection agreement and found it supported its interpretation. Thus, because the Commission employed the proper rules of contract construction under Michigan law and based its findings on the administrative record, this Court cannot say its decision was arbitrary and capricious. *MCI Metro*, 323 F.3d at 354. Furthermore, the Commission's findings are further buttressed by the fact that Plaintiff bore the burden of persuasion before the Commission.

The Court does not hold that Plaintiff's interpretation of the interconnection agreement is entirely implausible or unreasonable. The Court simply holds that the Commission's interpretation was also reasonable and supported by the evidence, as is the Commission's decision that Plaintiff did not carry its burden before it, and therefore, reversal is unwarranted. *Id.*

---

[6] Plaintiff has presented a cogent argument to support its theory. Yet, this only lends further credence to the Commission's finding of ambiguity—that two readings are possible.

### B. Due Process Deprivation

Plaintiff contends that because the Commission refused to exercise its discretionary authority to reopen the record and receive evidence, it was denied due process of law.[7] The Court engages in a two-step analysis when resolving procedural due process issues. First this Court will "initially determine whether a protected property or liberty interest exists and then determine what procedures are required to protect that interest." *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). Plaintiff has not presented any evidence that it had a protected property or liberty interest in light of the Commission's discretion to refuse its request to reopen, and therefore, no due process violation can follow.

> Furthermore, even if Plaintiff could show it had a protected property interest:
>
> The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* at 378. "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976)).

*Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423-24 (6th Cir. 1996). This Court is satisfied that Plaintiff was given an adequate opportunity to be heard and present any evidence it desired to

---

[7] The Commission's Rule of Practice and Procedure 401 provides, in pertinent part, that "[a] proceeding *may* be reopened for the purpose of receiving further evidence when a reopening is necessary for a full and complete record or there has been a change in conditions of fact or law such that the public interest requires the reopening of the proceeding." (emphasis supplied).

support its contentions. The fact that the Commission did not exercise its discretionary authority to reopen and receive evidence does not rise to the level of a due process violation.[8]

## IV. CONCLUSION

The Court will affirm the order of the Commission (Count One), deny Plaintiff's Due Process claim (Count Two), and dismiss Count Three of Plaintiff's Complaint. A Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>October 12, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[8] Even if Plaintiff is correct in its assertion that the Commission should have reopened the record, this failure does not offend the Due Process Clause. *See Purisch*, 76 F.3d at 1423 (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.")).